WO

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Sue Muirhead,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-18-00840-PHX-DJH<br><br>**ORDER** |

Plaintiff seeks judicial review of the Social Security Administration Commissioner's decision denying her application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits (Doc. 14). Plaintiff filed an Opening Brief, Defendant filed a Response, and Plaintiff filed a Reply. (Docs. 14, 15, and 16). After review of the record, the parties' briefs, and applicable law, the decision of the Commissioner is reversed and remanded for further proceedings consistent with this Order.

**I.  BACKGROUND**

Plaintiff filed an application for SSDI benefits under Title II of the Social Security Act on June 7, 2013, and application for SSI benefits under Title XVI of the Social Security Act on September 30, 2013. (AR[1] 31). Both applications initially alleged an onset of disability date of September 11, 2008. (*Id.*) After state agency denials, the Administrative Law Judge ("ALJ") held a hearing on September 13, 2016. (AR 55-105). During the

---

[1] Citations to "AR" are to the administrative record.

hearing, Plaintiff moved to amend her onset of disability date to July 3, 2013, which the ALJ granted. (AR 31). Following the hearing, the ALJ issued an unfavorable decision on December 29, 2016, which was adopted by the Social Security Administration Appeals Council as the agency's final decision. (AR 8-13, 31-58). On March 13, 2018, Plaintiff filed her Complaint, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), requesting judicial review and reversal of the Commissioner's decision. (Doc. 1).

Plaintiff was 39 years old at the time of her alleged amended onset of disability. (AR 50). Plaintiff graduated high school, attended college, and graduated with two associate's degrees. (AR 63). Her past relevant employment included a job as surgical technician. (*Id.*) Plaintiff claims she is unable to work due to cervical degenerative disc disease, or spondylosis, with residuals of spinal surgeries in 2007 and 2014; lumbar degenerative disc disease; migraine headaches; and fibromyalgia. (Doc. 14).

## II. LEGAL STANDARDS

In *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), the Ninth Circuit Court of Appeals reiterated the well-settled standards governing judicial review of an ALJ's disability determination. "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Id.* at 1009 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). In determining whether substantial evidence supports the ALJ's decision, a district court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "Where the evidence is susceptible to more than one rational interpretation, one of which

supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Put another way, the ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

A district court considers only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court can "review only the reasons provided by the ALJ . . . and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. ALJ's Five–Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an

adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).

Applying the five-step evaluation process, the ALJ here found that Plaintiff was not disabled and not entitled to benefits. (AR 46). At step one, the ALJ concluded Plaintiff did not engage in substantial gainful activity since July 3, 2013, the alleged amended disability onset date. (AR 33). The ALJ noted that Plaintiff did earn a small amount of income in 2014 from a legal settlement and that Plaintiff had an ongoing online business trying to sell vitamin supplements, but the earnings from that endeavor were below substantial gainful activity levels. (*Id.*) At step two, the ALJ determined that Plaintiff had the following severe impairments: "*combined* severity of cervical degenerative disc disease/spondylosis, status post surgeries in 2007 and 2014; post laminectomy syndrome; lumber degenerative disc disease; migraine headaches; fibromyalgia; mood disorder not otherwise specified; major depressive disorder; dependent personality disorder; anxiety disorder not otherwise specified; and obesity." (AR 34) (emphasis in original)). Additionally, the ALJ found Plaintiff's GERD, asthma, and sleep apnea to be non-severe impairments. (AR 34-35). At step three, the ALJ held that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." (AR 35). At step four, the ALJ determined that Plaintiff had

> the residual functional capacity to perform sedentary work . . . except the [Plaintiff] can frequently lift and carry less than ten pounds and occasionally lift and carry ten pounds. She can stand and walk for a total of two hours in an eight-hour workday. She can sit for more than six hours. She can occasionally climb ramps and stairs. She can occasionally kneel[,] crouch and crawl. She can frequently balance and can perform work that requires no climbing of ladders, ropes, or scaffolds. She can frequently reach overhead bilaterally. She can perform work that avoids concentrated exposure to loud noise environments, pulmonary irritants, and hazards such as moving machinery and unprotected heights. She can perform simple, routine, and repetitive tasks and simple unskilled work. She can perform work with that occasional superficial interaction with the public co-worker, and supervision that is direct and concrete with changes in the workplace gradually introduced.

(AR 37). The ALJ further found that Plaintiff was unable to perform any past relevant work. (AR 44). At step five, the ALJ found that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (AR 45). The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 3, 2013, through the date of this decision." (AR 46).

## IV. DISCUSSION

Plaintiff argues that the ALJ erred by (1) rejecting the assessments of Plaintiff's treating physician, Dr. Feldman; (2) discrediting Plaintiff's symptom testimony, and (3) giving little weight to lay witness observations. (Doc. 14 at 1-2). Plaintiff asks this Court to remand for an award of benefits, or in the alternative to remand for further proceedings. (*Id.* at 21). Defendant argues that the ALJ's decision should be affirmed because it was free from harmful error. (Doc. 17).

### A. Medical Opinions

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

Here, the ALJ gave little weight to the opinions of Dr. Feldman's, Plaintiff's treating physician. (AR 42). The only reason articulated by the ALJ for affording little weight to Dr. Feldman's opinions was that his opinions "were not supported by the objective medical evidence and not consistent with the acknowledge activity level." (*Id.*) Defendant argues that "the ALJ considered the medical evidence at length and gave reasons for the weigh given." (Doc. 15 at 12). The Court agrees that the ALJ gave a thorough recitation of the medical evidence in the record, however, the Court finds that the ALJ did not provide a connection between the discussion of the medical evidence and his conclusion that Dr. Feldman's opinions were only entitled to little weight. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). The ALJ failed to cite to specific evidence that contradicted Dr. Feldman's opinions or explain how Dr. Feldman's assessments of Plaintiff's activity level was inconsistent with medical evidence. In other words, while the ALJ did summarize the medical evidence, he did not state his interpretations that support his findings.

Additionally, the Court finds it troubling that the only opinion the ALJ gave great weight to was the opinion of Don Johnson, Ph.D, who apparently is not a physician. (AR 43). Moreover, Dr. Johnson was a non-examining consultant; therefore, the ALJ should have afforded more weight to the opinions by treating physicians and examining physicians than to Dr. Johnson's opinions. *Maydanis v. Colvin*, 119 F. Supp. 3d 969, 974 (D. Ariz. 2015) ("Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-

examining physician."). Thus, at the very least, the ALJ should have acknowledged the physician opinion hierarchy and explained his rational for departing from it.

Although the ALJ recounted much of the medical evidence (AR 38-44), he failed to explain what evidence supported his conclusions. For example, the ALJ rejected a treating physician's opinion in favor of a non-examining state consultant without first providing specific and legitimate reasons that were supported by substantial evidence. In short, the ALJ erred in failing to weigh all relevant factors and in rejecting the opinions of Dr. Feldman, Plaintiff's treating physician, without adequate explanation supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (ALJ erred in rejecting treating physician's opinion and adopting the consensus view where the ALJ failed to give specific and legitimate reasons for the rejection); *Embrey*, 849 F.2d at 421-22 (noting that it is not enough for the ALJ to simply recount the medical evidence in seriatim fashion and then reach unexplained conclusions). Therefore, the Court finds the ALJ erred in affording little weight to Dr. Feldman's opinions.

### B. Plaintiff's Symptom Testimony

In evaluating Plaintiff's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether Plaintiff presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if there is no evidence of malingering, the ALJ may reject the Plaintiff's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 41). Because the ALJ made no finding of malingering, he was required to give clear and convincing reasons for his adverse credibility finding. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)). For reasons explained below, the ALJ has not met this high burden.

The ALJ found Plaintiff's activity level was inconsistent with the alleged degree of limitation described by Plaintiff. (AR 40). Even though the ALJ provided several reasons for this finding, the Court finds that none of the proffered reasons have merit. To support his conclusion, the ALJ cited that Plaintiff was running an online business, she attended a business conference in Florida for five days in February 2016, she took a trip to Las Vegas in September 2015, she drove a vehicle occasionally, she performed some household chores, she spent time on the computer and her smartphone, and she was occasionally able to go out to eat. (*Id.*)

The ALJ claimed that Plaintiff's ability to "run[] an online business" was support for his conclusion that Plaintiff's daily activities were inconsistent with her alleged degree of limitations. (*Id.*) However, Plaintiff's so-called "online business" consisted of Plaintiff posting on social media about vitamins to see if anyone was interested in buying them. (AR 64). Plaintiff testified that she posts on social media, from her smart phone, three to five times a day about the availability of the vitamins, and each post only takes a minute or two. (AR 67). Thus, Plaintiff's activity running her "online business" consisted of, at most, posting on social media for ten minutes a day. The ALJ fails to explain how that amount of activity was inconsistent with Plaintiff's alleged degree of limitations.

Regarding Plaintiff's trips to Florida and Las Vegas, the ALJ fails to acknowledge

that Plaintiff specifically testified about her activity level during both of those trips. For example, Plaintiff testified that while in Las Vegas she saw one show and that "[she] actually wasn't able to do a lot" with her friends because she had to take naps in the hotel room. (AR 80). And while she was in Florida, she kept falling asleep during the seminars, had to leave an event that had no seating, and by the end of the trip she had to use a wheelchair. (AR 80-85). Thus, even though Plaintiff did take two trips, the ALJ failed to acknowledge Plaintiff's activity level while on those trips was very limited. *See Moreno v. Colvin*, 174 F. Supp. 3d 1112, 1120 (D. Ariz. 2016) (finding that the ALJ failed to explain how plaintiff's trip contradicted any of plaintiff's specific symptom testimony).

Furthermore, the ALJ fails to explain how Plaintiff's ability to occasionally drive a vehicle, perform some household chores, spend time on the computer and her smartphone, and occasionally go out to eat was inconsistent with her alleged limitations. The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). Rather, the ALJ must make specific findings relating to Plaintiff's activities and their transferability to a work setting to conclude that they warrant an adverse credibility determination. *See id.* Therefore, the Court finds that the ALJ failed to meet the demanding clear and convincing standard for his adverse credibility finding.

### C. Lay Witness Observations

Plaintiff contends that the ALJ improperly evaluated the third-party function reports provide by Plaintiff's mother and letter written by Plaintiff's father. (Doc. 14 at 20-22). When an ALJ discounts the testimony of lay witnesses, "he [or she] must give reasons that are germane to each witness." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (alteration in original)); *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless

the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Plaintiff's mother completed three third-party function reports on Plaintiff's behalf (AR 445-52, 484-91, 548-55), and Plaintiff's father wrote a letter concerning Plaintiff's impairments. (AR 1605-06). The ALJ considered the reports and letter but concluded that "the extreme limitations contained therein [were] not support by the evidence of the record." (AR 44). Thus, the ALJ afforded little weight to the reports and letter. (*Id.*) However, "[a] lack of support from medical records is not a germane reason to give 'little weight'" to the lay witness observations. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Although a finding that the observations of a lay witness is inconsistent with medical evidence is a germane reason. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Put differently, a finding that a lay witness observation is *inconsistent* with the medical evidence is a germane reason, but a finding that the lay witness observation is *unsupported* by the medical evidence is not a germane reason. Here, the ALJ found the reports completed by Plaintiff's mother and the letter written by Plaintiff's father were not supported by the medical evidence; thus, the ALJ did not provide a germane reason for affording little weight to these lay witness observations. *See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

## V. REMAND

Having decided to reverse the ALJ's decision, the Court has discretion to remand the case for further development of the record or for an award of benefits. *See Reddick*, 157 F.3d at 728. Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *See Smolen*, 80 F.3d at 1292; *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the Court finds that it is not clear from the record that the ALJ would be

required to find Plaintiff disabled if all the evidence were properly evaluated. The Court finds that further evaluation of the medical evidence consistent with this Order, along with further analysis of Plaintiff's subjective symptom testimony and lay witness observations are necessary before a proper determination of Plaintiff's disability can be made. Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate here.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment accordingly.

Dated this 28th day of March, 2019.

Honorable Diane J. Humetewa
United States District Judge